John Dale and Rosalie Dale, his wife, et al., Appellants *v.* Zoning Hearing Board of Tredyffrin Township and Cabrini College, Appellees.

Argued June 3, 1985, before Judges CRAIG and MAC-PHAIL, and Senior Judge KALISH, sitting as a panel of three.

*John E. Riley*, with him, *Thomas A. Riley, Jr., Riley Law Associates, Ltd.*, for appellants.

*John D. Snyder*, with him, *James E. McErlane, Lamb, Windle & McErlane, P.C.*, for appellee, Cabrini College.

OPINION BY JUDGE CRAIG, August 20, 1985:

John and Rosalie Dale and other neighboring residents (objectors) appeal an order of the Court of Common Pleas of Chester County, which affirmed a decision of the Tredyffrin Zoning Hearing Board granting to Cabrini College a special exception to permit construction of three dormitories on land in Tredyffrin Township, which is zoned as an R-1 (single-family) District.

We must determine[1] (1) if the proposed dormitories, in the context of a municipality where only the

---

[1] When the court below receives no new evidence, our review is limited to a determination of whether the zoning hearing board abused its discretion or committed an error of law. *Lawrence v. Zoning Hearing Board of Lower Gwynedd Township*, 19 Pa. Commonwealth Ct. 128, 388 A.2d 779 (1975).

dormitories are located, are an educational use according to the applicable provisions of the zoning ordinance; (2) whether the proposed structures may be used only as single-family dwellings, not as dormitories, because of their single-family design; and (3) whether the zoning hearing board and the court below erred in rejecting the contention of neighboring objectors that notice of the hearing on the special exception was inadequate.

Cabrini College is located on approximately 110 acres, only six acres of which are in Tredyffrin Township, Chester County, while the remaining 104 acres are in Radnor Township, Delaware County. Presently Radnor Township contains all of the college's facilities.

Cabrini College's special exception request proposes, on the six-acre Tredyffrin tract, three dormitory buildings designed in a style consistent with that of the single-family dwelling neighborhood, and in conformity with the area and height requirements of the R-1 Residential District. Each of the three residences would accommodate about sixteen students. The board and the trial court granted the special exception on the basis that the dormitories constituted an "educational use."

The objectors contend that, where dormitories are the only college facility located in the municipality, dormitory facilities are not educational uses. The Tredyffrin Township Zoning Ordinance allows:

> 601.5 The following uses, when authorized as a special exception, subject to the general standards prescribed in section 1606 and 1909:
>
> (a) Educational, religious or philanthropic use, other than a use permitted in this section above, including a college or seminary; kinder-

garten or child nursery; a convent, monastery or similar religious institution . . . .

The ordinance does not define the term "educational use." In *Gilden Appeal,* 406 Pa. 484, 492, 178 A.2d 562, 566 (1962), Justice MUSMANNO, when examining an earlier ordinance of the same township, determined that "[i]n the absence of any definition to the contrary in the Zoning Ordinance, the term 'educational institution' as used in the Ordinance must be presumed to have been employed in its broadest sense . . . ."

No Pennsylvania cases at the appellate level have addressed the issue of whether a dormitory as such falls within the definition of educational use. However, in *Board of Adjustment v. Muhlenberg College,* 33 Leh. L.J. 399 (1969), the Court of Common Pleas of Lehigh County had to construe a similar zoning ordinance, which allowed educational uses in a residential district, and held that an educational use encompasses "all activities reasonably necessary and proper to effectuate [the college's] academic functions" and that college dormitories are "clearly within the broadly construed sense of an educational institution." *Muhlenberg College,* 33 Leh. L.J. at 401.

Judge GAWTHROP, the trial judge here, astutely observed that dormitories are "universally equipped with bookshelving, desks, and chairs, and, as such, provide students with a place to study as well as sleep . . . [and] that the educational process . . . embraces class preparation, review, and general study."

Moreover, a college campus in its entirety obviously constitutes an educational use. The fact that the campus is, or is not, divided by a municipal boundary does not change the real nature and use of the campus components.

We therefore conclude that dormitories are an educational use or part of one. Jurisdictions outside

of Pennsylvania have reached the same conclusion. *State v. Laurel Crest Academy*, 2 Conn. Cir. Ct. 294, 198 A.2d 229 (1963); *Schueller v. Board of Adjustment of Dubuque*, 250 Iowa 706, 95 N.W. 2d 731 (1959); *Western Theological Seminary v. Evanston*, 325 Ill. 511, 156 N.E. 778 (1927).

The objectors next contend that the Tredyffrin Zoning Ordinance requires that, if a structure resembles a single-family dwelling, it must house a family rather than a group of unrelated college students. This argument assumes that this ordinance gives the board architectural design control powers in relation to special exception decisions. The ordinance, however, indicates otherwise, as follows:

2110. *STANDARDS FOR REVIEW OF PROPOSED EXCEPTION OR VARIANCE*

A. In any instance where the Board is required to consider a request for a special exception or variance in accordance with the provisions of this Ordinance, the Board shall to the full extent permitted by law consider the following factors where appropriate.

. . . .

5. Take into consideration the character and type of development in the area surrounding the location for which the request is made and determine that the proposed change or modification, as permitted, will constitute an *appropriate use* in the area and will not substantially injure or detract from the use of surrounding property or from the character of the neighborhood. (Emphasis added.)

Thus, as Judge GAWTHROP accurately noted, "the issue here is not the architectural design or style of the

structures, but the use to which they are put." Thus, in the absence of some explicit and valid architectural design standard, the zoning hearing board only has authority to determine if the use is appropriate and other physical requirements are met.

Because the ordinance authorizes special exceptions for educational uses, and we have determined that dormitories are educational uses, and, because the proposed structures conform to the area and height restrictions of an R-1 District, we agree with the trial court that the zoning hearing board did not abuse its discretion or commit an error of law by granting the special exception.

Finally, the objectors contend that the zoning hearing board's official notice for its public hearing was inadequate because it stated the subject matter to be the "Application of Cabrini College . . . for a special exception . . . due to the refusal of the building inspector to issue a permit for the construction of a new dormitory."

As Judge GAWTHROP accurately stated, "the purpose of notice of a zoning board hearing is to apprise potential protestants of the general nature of the application." See generally Ryan, Pennsylvania Zoning Law and Practice, §9.4.13 (1981). Although the notice referred to the proposed dormitory complex as "a new dormitory" rather than as being comprised of three detached buildings, it was neither incomplete nor misleading, particularly when considered in relation to the plans on file. Viewing those notice elements objectively, rather than the subjective claims of confusion offered by neighbors at the hearing, this court's determination is that the notice was not insufficient.

Accordingly, we affirm.

ORDER

Now, August 20, 1985, the order of the Court of Common Pleas of Chester County, dated February 22, 1984, at No. 407 July Term, 1979, is affirmed.