**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2075-23

BESADAR HOLDINGS, LLC and
SOLOMON HALPERN, individually,

    Plaintiffs-Respondents,

v.

TOWNSHIP OF LAKEWOOD
PLANNING BOARD,

    Defendant-Respondent,

and

VIGGY BLECH,

    Defendant/Intervenor-Appellant.

_____

Argued April 29, 2025 – Decided August 27, 2025

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2115-22.

Edward F. Liston, Jr. (Edward F. Liston Jr., LLC) argued the cause for appellant Viggy Blech.

Robert C. Shea argued the cause for respondents Besadar Holdings, LLC and Solomon Halpern (R.C. Shea & Associates, attorneys; Robert C. Shea, of counsel and on the brief; Vincent J. DelRiccio, on the brief).

John J. Jackson III & Associates, Attorneys at Law, LLC, attorneys for respondent Township of Lakewood Planning Board (John J. Jackson, III, of counsel and on the brief; Jilian McLeer, on the brief).

PER CURIAM

In this action in lieu of prerogative writs matter, intervenor/defendant Viggy Blech appeals from the January 29, 2024 Law Division order vacating defendant Township of Lakewood Planning Board's (the Board) resolution denying Besadar Holdings LLC's and Solomon Halpern's (collectively, plaintiffs') major subdivision application. We affirm.

I.

We summarize the relevant facts from the record. On December 23, 2021, plaintiffs submitted an application to the Board for preliminary and final major subdivision of a 3.2 acre tract of land consisting of Lots 23, 24.01, and 34 in Block 24 of Lakewood Township. The application sought to subdivide the tract into nine single-family lots in a R-12 zoned single-family district. These lots would then be sold to individual buyers who would build custom homes. The planned subdivision would also widen Fourteenth Street and construct a new

fifty-foot right-of-way ending in a cul-de-sac bulb. This newly proposed street, "Charlotte's Walk," would be thirty-two feet wide with a curb, and sidewalks along both Fourteenth Street and Charlotte's Walk.

The use and bulk standards for an R-12 zone are set forth in Lakewood's Unified Development Ordinance (UDO) § 18-902(E). These standards require lots have a minimum size of 12,000 square feet and maximum building coverage of thirty percent. Per UDO § 18-807(A), a single-family residence with six to eight bedrooms must provide at least four off-street parking spaces. Finally, UDO § 18-910(D) permits basement apartments in an R-12 zone.

Plaintiff's application also included a traffic study, which estimated the impact of nine single-family homes on the future traffic conditions in the area. The traffic study estimated the proposed subdivision would generate fourteen new trips during peak morning street hours and eighteen new trips during peak evening street hours.

Plaintiffs' application sought two design waivers and did not seek any variances. The non-radial lot line design waiver sought to contain the entirety of the stormwater facility to proposed Lot 24.05. The waiver from the required placement of street trees sought the installation of the street trees along the entire Fourteenth Street frontage to accommodate the proposed drainage system.

A-2075-23

In a letter dated February 3, 2022, Township Engineer Terence Vogt explained that he reviewed plaintiffs' revised application and submitted comments and recommendations to the Board. In regard to the street design waiver, Vogt recommended shade trees be placed "to the southwest of the stormwater management facilities," if the Board granted approval. Further, with regard to the non-radial lot lines design waiver, Vogt recommended the Board grant the waiver as it would "keep the stormwater management facilities entirely on new Lot 24.05."

In light of Vogt's review and recommendations to the Board, plaintiffs submitted a second revised subdivision plan to the Board addressing Vogt's concerns. On March 31, 2022, following his review of the revised plan, Vogt submitted a second letter to the Board in which he restated his recommendations regarding the design waivers. Plaintiffs next submitted a third version of the revised subdivision plan.

The Board conducted public hearings for the subdivision plan on three non-consecutive days. Public notice of the hearing was published in the Asbury Park Press and The Star Ledger forty-eight hours prior to the first hearing held on April 5, 2022. At this hearing, the Board heard from plaintiffs' counsel, as well as plaintiffs' engineer and professional planner Brian Flannery, who

4

explained that the purpose of the street design waiver was to accommodate the proposed stormwater facility. According to Flannery, without this waiver, the stormwater facility would have to be moved to a "less desirable position," making maintenance of the facility more difficult. Nevertheless, the Board expressed concern with preserving the "prestigious nature" of the area and maintaining "respect" for the neighborhood. Following the hearing, Vogt issued his third letter regarding the proposed subdivision, and once again, his recommendations for both design waivers remained unchanged.

On June 3, 2022, the Asbury Park Press published the public notice for the second hearing scheduled for June 14, 2022. This notice stated that "[t]he applicant[s] propose to subdivide an existing tract . . . into nine[] new single-family parcels."

At the June 14 Board meeting, Flannery presented the modifications to the subdivision plan that were made in response to Vogt and the Board's request. Flannery explained that plaintiffs only sought to allow homeowners of the individual lots to build whatever is permitted in an R-12 zone. He further explained that because the Board requested plans reflecting the maximum coverage allowed by the Township's ordinance, basements, and two lateral lines were included in the plans. Board Chairperson Moshe Neiman stated he

5

understood the application was solely for the purpose of subdividing the tracts and selling the resulting lots.

Ronald Gasiorowski, an attorney representing an unidentified objector, objected to the Board's jurisdiction, claiming the public notice failed to notify residents in the surrounding area that plaintiffs proposed single-family homes also included nine basement apartments. He also stated plaintiffs' application was no longer for nine homes; rather, the application was for eighteen homes because of the basement apartments.

The unidentified objector's engineering expert, Gordon Gemma, testified that the presence of two lateral lines in the plans indicated plaintiffs planned to build basement apartments. The Board's counsel then clarified that plaintiffs were not constructing basement apartments; rather, the revised plans reflected the maximum homes plaintiffs believed could be built under the ordinances.

Blech testified that he was not in favor of plaintiffs' application given the unknown impact on the neighborhood, flooding, and safety concerns.

The Board subsequently criticized the traffic study, with Neiman observing, based on his personal experience, that a ten-house block without basement apartments would generate approximately three times the peak-hour traffic estimated in the traffic study. In response, Flannery asserted that off-site

6

traffic impacts are not plaintiffs' responsibility, and the proposed population density complies with the applicable ordinance.

As to the street tree design waiver, another Board Engineer, Dave Magno, suggested a ten-foot conservation easement. Flannery did not agree to the proposed easement on the grounds that it was not required under the applicable ordinance. However, Flannery testified that plaintiffs could adjust their plans to accommodate the street trees if the Board did not grant the waiver. Nevertheless, the Board denied plaintiffs' application based on "safety concerns."

On August 2, 2022, plaintiffs requested the Board reconsider its denial of their application. The Board acknowledged the nine-home plan was a conforming application with no variances sought by plaintiffs. Nonetheless, the Board denied plaintiffs' request for reconsideration.

On August 23, 2022, the Board entered a memorializing resolution denying the preliminary and final major subdivision application. The resolution acknowledged that while the application represented a conforming application with no variances, the Board rejected the application based on "public safety concerns" regarding the lack of street parking coupled with the substantial proposed density, particularly in light of the basement apartments noted on the

plan. The Board concluded plaintiffs' application would have "significant detrimental effects on the safety of the neighborhood" and did not "further the purposes of zoning pursuant to N.J.S.A. 40:55D-2."

On September 23, 2022, plaintiffs filed an action in lieu of prerogative writs, seeking reversal of the Board's denial of their major subdivision application. Plaintiffs argued the Board's denial was arbitrary, capricious, and unreasonable because it was against the weight of the evidence presented at the hearings.

Blech moved to intervene, which was granted by the trial court on December 21, 2022 by consent of the parties. Blech subsequently filed an answer on January 5, 2023.

Following a hearing on July 31, 2023, the trial court remanded the matter to the Board and directed it to adopt a supplemental resolution that provided more detailed reasoning for the denial of plaintiffs' application.

In compliance with the trial court's order, the Board held a hearing on August 2, 2023. Thereafter, the Board issued a supplemental resolution denying the application on September 19, 2023. In its supplemental resolution, the Board determined plaintiffs' application failed to "satisfy the negative criteria" and would "substantially impair[] the intent and purpose of the municipal zoning

plan and ordinances." The Board further determined the proposed major subdivision did not "further the purposes of zoning pursuant to N.J.S.A. 40:55D-2," finding the plan did not promote "appropriate population densities" and would not "promote the free flow of traffic." The Board also expressed concerns regarding the lack of street parking in light of the proposed basement apartments as noted in the plans.

Following oral argument on December 21, 2023, the trial court reversed the Board's denial of plaintiffs' application. In its oral decision, the trial court concluded that the Board's denial of plaintiffs' application was arbitrary and capricious. The court considered the substantial evidence presented at the hearings: (1) the lot line creation reviewed by the planning professionals, which were deemed adequate and appropriate; (2) the planning professionals' recommendation that the waivers be granted because it made good planning sense; and (3) the waivers were conforming. The court explained the "waivers that [were] sought in order to create a workable development within the requirements set forth in the Lakewood Township ordinances." Accordingly, the court concluded that the Board did not have the authority to deny a subdivision because of an anticipated detrimental impact of off-street traffic

conditions and plaintiffs had complied with both the road-widening requirements and the off-street parking.

In a January 29, 2024 order, the trial court vacated the Board's August 23, 2023 resolution and remanded the matter to the Board to adopt a resolution approving plaintiff's' application for a major subdivision with waiver relief. This appeal ensued.

II.

Blech raises three issues for our consideration on appeal:

POINT I – [THE BOARD] REQUIRES WAIVERS TO BE BASED ON HARDSHIP, AND [PLAINTIFFS] FAILED TO PROVIDE THE BOARD WITH EVIDENCE TO JUSTIFY EITHER OF THE TWO WAIVERS REQUESTED; THE TRIAL COURT EXCEEDED ITS AUTHORITY IN ORDERING THE SUBDIVISION.

POINT II – THE BOARD'S STATED REASONS FOR DENYING THE SUBDIVISION WERE ENTITLED TO DEFERENCE; IT WAS ERRONEOUS[] FOR THE TRIAL COURT TO REVERSE.

POINT III – THE PUBLIC NOTICE WAS INSUFFICIENT, THUS DEPRIVING THE BOARD OF JURISDICTION TO CONSIDER THE APPLICATION.

We first address Blech's contention that the Board lacked jurisdiction over plaintiffs' application based on allegedly deficient public notice for the June 3

and June 14, 2022 hearings.  Blech argues the public notices were insufficient because they did not specify that approval of the plan would permit the construction of basement apartments.  We reject Blech's arguments.

It is well established that the public notice requirements of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136, are jurisdictional. Shakoor Supermarkets, Inc., v. Old Bridge Twp. Plan. Bd., 420 N.J. Super. 193, 201 (App. Div. 2011).  N.J.S.A. 40:55D-11 "requir[es] notice of the 'nature of the matters to be considered' by the [B]oard."  Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J. Super. 335, 350 (App. Div. 2008) (citing Perlmart of Lacey, Inc. v. Lacey Twp. Plan. Bd., 295 N.J. Super. 234, 237 (App. Div. 1996)).  "[T]he critical element of such notice has consistently been found to be an accurate description of what the property will be used for under the application."  Id. at 352 (quoting Perlmart, 295 N.J. Super. at 238) (internal quotation marks omitted).  In reviewing notices, we have "read the statute to require a 'common sense description of the nature of the application, such that the ordinary layperson could understand its potential impact upon him or her.'"  Ibid. (quoting Perlmart, 295 N.J. Super. at 239).

Here, Blech misconstrues the nature of plaintiffs' application.  The public notices for both hearings were legally sufficient and properly advised the public

11

about plaintiffs' proposed application—preliminary and final major subdivision approval to subdivide an existing tract known as Lots 23, 24.01, and 34 in Block 24 into nine new single-family parcels with a cul-de-sac road, located within the R-12 single-family residential zone district. As reflected in the hearing transcripts, the information provided in the notice was sufficient to enable the public to attend the hearings and present their views to the Board.

We next address whether the trial court erred in finding plaintiff presented sufficient proofs at the hearing to satisfy the criteria to be granted two design waivers. Both Blech and the Board contend that plaintiffs are required to demonstrate undue hardship to request a design waiver. We are not persuaded.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as . . . the trial court.'" Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "We have long recognized that zoning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (alteration in original) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)). However, we review de novo a board's

conclusions of law. Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993). Thus, we exercise plenary review of a board's interpretation of the MLUL. See Russo v. Bd. of Trs., Police and Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973)); Motley v. Zoning Bd. of Adjustment, 430 N.J. Super. 132, 146 (App. Div. 2013).

We give deference to the actions and factual findings of local boards. Jacoby, 442 N.J. Super. at 462. "A [B]oard's decision 'is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable.'" Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998) (quoting Sica v. Bd. of Adjustment, 127 N.J. 152, 166-67 (1992)); see also Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). "We do not review the wisdom of [a planning board's] decision, rather . . . we merely 'determine whether the [B]oard could reasonably have reached its decision.'" Pullen v. Twp. of S. Plainfield Plan. Bd., 291 N.J. Super. 1, 6-7 (App. Div. 1996) (quoting Davis Enters. v. Karpf, 105 N.J. 476, 485 (1987)). "Accordingly, we will not disturb a board's decision unless we find a clear abuse of discretion." Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 82 (2002).

A board may grant a design waiver "if the literal enforcement of one or more provisions of the ordinance is impracticable or will exact undue hardship

13

because of peculiar conditions pertaining to the land in question." N.J.S.A. 40:55D-51(b). This same standard is articulated in UDO § 18-601. While plaintiffs concede no undue hardship existed here, a design waiver may still be granted if literal enforcement of the ordinance is impracticable.

We hold the trial court's decision is supported by substantial competent evidence in the record. The record reveals that the trial court acknowledged that plaintiff submitted a conforming application to the Board. The record further reveals that the Board denied the application based on public safety concerns related to density, an issue that falls outside the Board's scope of authority. The trial court correctly determined that "the [B]oard cannot use the occasion of a request for a waiver of a site plan regulation . . . to delve into areas not implicated by the application or which can be adequately addressed in another fashion." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 37 n.2 (2013).

We also note the Board mistakenly found plaintiffs failed to satisfy the negative criteria, which applies only to applications seeking variances. See Ten Stary, 216 N.J. at 30; Nash v. Bd. of Adjustment, 96 N.J. 97, 102 (1984). Thus, the court correctly determined that it was inappropriate for the Board to consider negative criteria to deny plaintiffs' application.

14

Based on our review of the record, we discern no error in the trial court's conclusions that the Board neither followed the statutory guidelines nor properly exercised its discretion. Columbro v. Lebanon Twp. Zoning Bd. of Adjustment, 424 N.J. Super. 501, 508 (App. Div. 2012) (quoting Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 199 (2001)). We likewise discern no error in the trial court's conclusion that the Board's action in denying plaintiffs' application was arbitrary, capricious, and unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2075-23